IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARK STEVEN PAPE,

                     Plaintiff,                    OPINION & ORDER

  v.

                                                             13-cv-236-jdp

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                     Defendant.

---

      Plaintiff Mark Pape seeks judicial review of a final decision of the Acting Commissioner of Social Security finding him not disabled within the meaning of the Social Security Act. Plaintiff contends, principally, that remand is warranted because the Administrative Law Judge (ALJ): (1) failed to properly analyze and assign weight to the opinion of plaintiff's treating physician; (2) incorrectly determined plaintiff's credibility; and (3) did not adequately explain why plaintiff's impairments do not meet or equal the severity of an impairment listed in the Social Security regulations. Plaintiff argues that, together, these errors resulted in a deficient residual functional capacity finding. The court agrees with plaintiff's criticism and will remand the case to the Commissioner for further proceedings.

BACKGROUND

**A. Procedural Background**

      Plaintiff was born in 1963 and has a high school education. His most recent employment was owning and managing a bar and grill, but he sold the business in 2009 and has not worked since. Plaintiff filed for disability insurance benefits on March 8, 2010, alleging a disability

onset date of July 8, 2008.[1] In his application, plaintiff identified several injuries and medical conditions that limit his ability to work, but he primarily relies on a back and hip injury he suffered in 2001.

Plaintiff's initial application for Social Security benefits was denied. After a hearing, ALJ Arthur J. Schneider issued a written opinion denying plaintiff's claim in full. The ALJ determined that plaintiff's date last insured was December 31, 2008, and that plaintiff therefore had to establish a disability before this date. R. 27.[2] Ultimately, the ALJ concluded that plaintiff did not have an impairment that met or medically equaled the severity of one of the listed impairments in the Social Security regulations, and that plaintiff retained the residual functional capacity to perform sedentary work, provided that he avoid hazardous heights and dangerous machinery. R. 26. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner. On April 5, 2013, plaintiff filed a timely complaint seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B. Relevant Medical Evidence**

The ALJ determined that plaintiff had the following severe impediments: back disorder; hip disorder (vascular necrosis); diverticulitis; and obesity. Although plaintiff initially included a shoulder injury in his application for benefits, the ALJ found that "there is no evidence of [the shoulder injury] in the medical record, nor any objective testing, so this is not a medically determinable impairment." R. 26. The ALJ also considered plaintiff's history of head trauma to

---

[1] Plaintiff initially indicated that he became disabled on January 1, 2008, but later amended his onset date.

[2] The record citations are to the Administrative Record, Dkt. 7.

2

be a nonsevere impairment because the condition did not cause plaintiff "more than minimal work-related limitation." *Id.*

The source of plaintiff's physical limitations appears to be a 2001 accident, when he fell from a ladder while at work. Plaintiff was on top of a shuttle bus when the ladder slipped and he fell ten feet to the ground, landing on his back. In his application, plaintiff noted that his back pain got progressively worse after the accident until, in 2008, he was no longer able to maintain his bar business. R. 27. Immediately following the accident, MRIs revealed a burst fracture of L2, a compression fracture of L1, and a disk bulge on the right side at L5-S1. R. 62. Plaintiff's primary treating physician was Dr. William Niedermeier, MD, whom plaintiff visited several times after his injury. Dr. Niedermeier recommended facet injections, but these did not alleviate plaintiff's pain. The record does not contain other documentation of treatment for the injury until a 2008 x-ray, although plaintiff had a hip replacement in 2005 and an appendectomy in 2007. R. 399, 407. The 2008 x-ray confirmed that plaintiff still suffered from his L2 compression fracture and a 1, 2 fusion, marginal osteophytes[3] throughout the lumbar spine, and moderate degenerative changes in the facets. R. 410.

In 2010, after applying for Social Security benefits, and after his date last insured, plaintiff returned to Dr. Niedermeier who noted that he had not seen plaintiff since the 2008 visit, but that plaintiff "continued to have disabling low back pain." R. 57. By this time, plaintiff was taking twelve to sixteen ibuprofen per day to control his pain, but Dr. Niedermeier advised him to avoid taking more than twelve. Treatment notes indicate that plaintiff described his pain as being primarily in the right side of his low back and that plaintiff's pain worsened when he

---

[3] Osteophytes—also called "bone spurs"—are bony growths on the spine that form over a long period of time. These growths can be a problem if they develop in such a way that they press on the nerves in the spine. *See Bone Spurs (Osteophytes),* Cedars-Sinai, http://www.cedars-sinai.edu/Patients/Health-Conditions/Bone-Spurs-Osteophytes.aspx (last visited Aug. 8, 2014).

stood and walked. R. 57-59. Dr. Niedermeier recommended a regimen of physical therapy and plaintiff attended fifteen of his eighteen sessions, apparently succeeding in limiting his pain to some degree. R. 535.

The record contains other correspondence from Dr. Niedermeier, presumably in support of plaintiff's then-pending application for Social Security benefits. Of particular importance to this case is the treating source statement that Dr. Niedermeier prepared on October 24, 2011. R. 364-67. The document consists of two parts: a "practitioner's report" that describes plaintiff's injury and prognosis, R. 364-65, and an "addendum" that offers a narrative description of plaintiff's medical history and physical condition, R. 366-67. The document also refers to a separate functional capacity evaluation (FCE) and notes that the FCE's restrictions were permanent limitations on plaintiff's ability to return to work. R. 364. The FCE indicated that plaintiff could only lift ten pounds infrequently, could not bend or kneel, and could occasionally sit and infrequently stand and walk. R. 369. In light of these limitations, the FCE concluded that plaintiff could not work. *Id.* The physical therapist who administered the FCE reported that plaintiff passed 91% of the validity criteria, "which suggests excellent effort and valid results which can be used for medical and vocational planning." R. 370. In his addendum to the practitioner's report, Dr. Niedermeier opined that the limitations in the FCE likely "would have applied as of 9-17-08 and thereafter." R. 367.

Plaintiff also suffers from diverticulitis, a painful inflammation of the intestine. Doctors initially suspected that appendicitis was the cause of plaintiff's abdominal pain, but changed their diagnosis when plaintiff's appendectomy revealed a normal appendix. R. 399. When Vicodin was unable to control plaintiff's abdominal pain, he received a prescription for Dilaudid. R. 403. There is no other history of treatment for this condition in the record and the ALJ noted that plaintiff did not suffer from any other flare-ups following his operation. R. 28.

Finally, plaintiff is obese. At the time of the ALJ's opinion, plaintiff was 5'11" and weighed 240-260 pounds with a body mass index of 33.5-36.3. R. 25. Treatment notes in the record confirm that plaintiff struggled with his weight throughout the relevant time period.

**C. The Administrative Hearing and Decision**

The ALJ held a hearing on December 20, 2011. Plaintiff was present, with counsel, as was Dr. Karl F. Botterbusch,[4] PhD, an impartial vocational expert (VE). R. 23. Plaintiff's medical records were accepted into evidence without objection and the ALJ heard testimony from plaintiff and the VE. R. 109, 112.

The ALJ asked plaintiff about his work history, his daily activities, and the reasons why he was unable to work. Plaintiff testified that his back and hip pain made it too difficult for him to continue working at his bar and grill, and that he had to sell the business in 2009 because he was no longer able to maintain it. R. 120-21. Plaintiff explained that, since his onset date, he is only able to sit for ten to fifteen minutes at a time before he has to lie down with a heating pad or ice packs. R. 122. In addition to describing his limitations in bending and twisting, plaintiff stated that he spends 60% of his day lying down because of his back pain. R. 126.

The VE testified that plaintiff could not perform any past relevant work, but that he could perform jobs at the sedentary level. R. 145-46. The ALJ posed a series of hypotheticals to the VE, all of which assumed a person of plaintiff's age and education. The most severe limits that the ALJ asked the VE to consider included lifting ten pounds occasionally and five pounds frequently, sitting and standing for no more than four to six hours a day, and missing two or

---

[4] The transcript of the hearing incorrectly identifies the vocational expert as "Carl F. Bouderbush." R. 139.

5

more random days each month due to pain and fatigue. R. 146. In response to this hypothetical, the VE concluded that there would not be jobs in the national economy available to plaintiff. *Id.*

The ALJ issued a decision on January 25, 2012, concluding that plaintiff was not disabled by December 31, 2008. The ALJ noted that plaintiff's "treating source statement was actually provided by a physical therapist, which is not an acceptable source, and it was based on an examination nearly three years after the date last insured." R. 29. According to the ALJ, "[t]hese circumstances render[ed] the opinion less credible as it applies to the claimant's abilities prior to the date last insured." *Id.* The ALJ found that the statement did not support plaintiff's claim "that his pain was that severe or limiting prior to the date last insured." *Id.* After considering the medical evidence and the VE's testimony, the ALJ ultimately concluded that plaintiff could not establish that he was disabled within the meaning of the Social Security Act.

OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision. *See Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). Rather, "the court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision,

6

and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

The primary issue in this case is what role, if any, Dr. Niedermeier's treating source statement should have played in the ALJ's consideration of plaintiff's application. The parties have taken up vastly different positions on this point. Plaintiff contends that an ALJ must use "the full body of rules applying [to] the evaluation of treating source opinions . . . regardless of when the opinion is given." Dkt. 19, at 2. These rules direct an ALJ to assign some level of weight to every opinion, including, potentially, "controlling weight" under 20 C.F.R. § 1527(c)(2). The Commissioner disagrees, arguing that the ALJ had no obligation to review evidence from 2011 because plaintiff had to establish a disability before December 31, 2008—his date last insured. Dkt. 18, at 10. Although it will be the ALJ's task to determine what weight Dr. Niedermeier's opinion deserves, the court agrees with plaintiff that the ALJ had an obligation to consider and discuss the opinion. Because the ALJ's decision falls short in this regard, remand is warranted.

**A. The ALJ failed to properly analyze Dr. Niedermeier's treating source opinion.**

Social Security regulations assure claimants that "[i]n determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). The regulations identify several factors, all of which ALJs must use to evaluate medical opinions. *Id.* § 404.1527(c); *see also Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). In reviewing ALJ determinations, this court has

consistently remanded cases where the written decision does not identify and apply these factors. *See, e.g., Evans v. Colvin*, No. 12-cv-888, 2014 WL 2615413, at *5 (W.D. Wis. June 12, 2014) ("The failure to explicitly discuss the § 1527(c) factors is itself a deficiency that warrants remand."); *Matton v. Colvin*, No. 12-cv-406, 2014 WL 1794573, at *5 (W.D. Wis. May 5, 2014) ("[T]he ALJ fails to discuss the § 1527(c) factors and ignores relevant evidence that might weigh in [the claimant's] favor. Standing alone, this deficiency warrants remand."). In this case, the ALJ did not analyze Dr. Niedermeier's opinion at all, let alone apply the required factors.

The ALJ's consideration of Dr. Niedermeier's opinion has two defects. First, the ALJ incorrectly concluded that the FCE which contained plaintiff's limitations was not part of Dr. Niedermeier's opinion. The ALJ attributed the FCE to "a physical therapist, which is not an acceptable medical source." R. 29. But the ALJ overlooked the fact that Dr. Niedermeier provided a statement expressly agreeing with the FCE and adopting its restrictions as his own. R. 367. Without some recognition of this point and explanation as to why the FCE is nevertheless attributed only to plaintiff's physical therapist, the ALJ has left the court without the required "logical bridge" from the evidence to his conclusion. Of course, if the ALJ had concerns about whether Dr. Niedermeier reviewed the FCE and genuinely adopted its restrictions, he had "a duty to develop a full and fair record" on the issue. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1512(d). This duty requires an ALJ to "seek additional evidence or clarification from a medical source when the report from that source contains conflict or ambiguities that must be resolved or when the report does not contain all the necessary information." *Simms v. Astrue*, 599 F. Supp. 2d 988, 1003 (N.D. Ind. 2009). But the ALJ did not undertake any effort to supplement the record and simply omitted Dr. Niedermeier's opinion on plaintiff's physical limitations.

The Commissioner attempts to support the ALJ's omission with a series of observations that, according to her, suggest "it is fair to say that Dr. Niedermeier did not write a treating source statement and he did not say anywhere in that statement that he had read the results of the FCE." Dkt. 18, at 15. The argument is not persuasive. The Commissioner contends that "[t]here is no indication that Dr. Niedermeier authored the initial (narrative) page [because] that page referred to both Dr. Niedermeier and Dr. Plooster by their titles and full names and in the third person." *Id.* at 14. But the Commissioner overlooks that Dr. Niedermeier *signed* the statement. R. 367. Dr. Niedermeier also signed the report to which the statement was attached. R. 364-65. The Commissioner cites no authority for the notion that a narrative statement written in the third person cannot be attributed to the doctor who signed it and the record does not support such a conclusion in this case.

The Commissioner also asserts that "there is no statement on either page . . . where Dr. Niedermeier stated that he had read the FCE report." Dkt. 18, at 14. But Dr. Niedermeier indicated on the form that he "agree[d] with the functional capacity restrictions outlined in the [FCE], dated 10-14-11 and adopt[ed] them as [his] own." Dkt. 367. This response confirms that he read the FCE. Given the evidence in the record, it was error for the ALJ to conclude that the FCE was not attributable to Dr. Niedermeier.

The second defect in the ALJ's consideration of Dr. Niedermeier's retrospective opinion is that the ALJ overlooked it in concluding that plaintiff's pain was not limiting prior to the date last insured. "A physician's retrospective diagnosis is a medical opinion of the claimant's impairments which relates back to the covered period." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). In general, "[r]etrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment." *Allord v. Barnhart*, 455 F.3d 818,

9

822 (7th Cir. 2006) (internal citations omitted). To rely on Dr. Niedermeier's statement, therefore, plaintiff needed to provide the ALJ with contemporaneous corroborating evidence—lay or medical—that established what his limitations were in 2008.

The court concludes that plaintiff presented sufficient contemporaneous evidence of his limitations to require the ALJ to consider the opinion as retrospective. *See Estok*, 152 F.3d at 640 ("A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period."). Dr. Niedermeier indicated that the FCE's limitations likely "would have applied as of 9-17-08 and thereafter." R. 367. To corroborate Dr. Niedermeier's opinion, plaintiff identified contemporaneous medical and lay evidence of these limitations. With regard to the medical evidence, plaintiff saw Dr. Michael D. Plooster, MD, in July 2008, after deciding that his pain had become intolerable. Plaintiff reported being unable to "sleep or get around well" because of his pain, and a physical exam revealed "difficulty getting up from a chair . . . . Tenderness [and] marked limitations of range of motion due to pain and spasms." R. 404. Dr. Plooster's notes indicate that although plaintiff was uninsured and wanted to forgo a "major workup," he still wanted at least a "conservative treatment plan." *Id.*

A few months later, but before his date last insured, plaintiff returned to Dr. Niedermeier and received the 2008 x-rays. R. 407-10. Those x-rays confirmed plaintiff's L2 compression fracture and 1, 2 fusion, and Dr. Niedermeier's treatment notes explain that plaintiff had difficulty bending and that his pain increased when he stood or walked. R. 407. This medical evidence is particularly relevant in the context of Dr. Niedermeier's later, retrospective opinion, because it shows that the opinion relates back to a time during which he actually treated plaintiff. *Cf. Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008) (an ALJ properly assigned no weight to an opinion because the doctor did not begin treating the claimant until twelve years after the claimant's date last insured); *Rudder v. Colvin*, No. 11-cv-50286, 2014 WL 3773565, at

10

\*14 (N.D. Ill. July 30, 2014) (an ALJ correctly rejected a retrospective opinion when the doctor "had only a short treatment relationship with Claimant that began four years after the DLI").

During the hearing, plaintiff also offered lay evidence—in the form of his own testimony—to support Dr. Niedermeier's opinion. Plaintiff described to the ALJ the limitations his pain has placed on his day-to-day functioning since 2008. R. 118-21. Typically, the claimant's friends or family will offer corroborating lay evidence. *See Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995) ("[R]etrospective medical opinions alone will usually not suffice unless the claimed disability date is corroborated, as by subjective evidence from lay observers like family members."). However, in this case, plaintiff's own testimony has indicia of reliability which would allow the ALJ to consider it as corroborating evidence even though a claimant's own testimony is self-serving and, by itself, not usually sufficient corroboration of a retrospective diagnosis.[5] For example, plaintiff testified that his pain prevented him from being able to maintain his business and that he was forced to sell the establishment as a result; the record confirms that plaintiff, in fact, began trying to sell the business in 2008 and completed the sale in 2009. R. 120. The fact that the ALJ found plaintiff's testimony to be only partially credible does not necessarily prevent his statements from offering contemporaneous evidence of earlier limitations, particularly given that there were deficiencies in the ALJ's credibility determination—an issue the court will address below. The medical records from the applicable time period, coupled with the objective support for plaintiff's description of his limitations,

---

[5] At least one other court in this circuit has concluded that a claimant's own, retrospective testimony of lower back pain and spasms, and the resulting limitation in activity "constitutes contemporaneous evidence that [a claimant's] condition existed during the insured period." *Free v. Astrue*, No. 09-cv-6313, 2011 WL 2415012, at \*9 (N.D. Ill. June 10, 2011). This court need not adopt a similar rule to decide plaintiff's case because the record contains other evidence that corroborates Dr. Niedermeier's opinion.

11

created enough contemporaneous evidence to enable the ALJ to consider Dr. Niedermeier's 2011 statement as a retrospective opinion.

The Commissioner argues that the court "should find that the record does not mandate a determination that [plaintiff] became disabled prior to December 31, 2008." Dkt. 18, at 12. The Commissioner is correct; the record does not mandate the result. In holding that there is some contemporaneous evidence of plaintiff's limitations, the court does *not* decide the ultimate issue of whether plaintiff was disabled, nor does the court decide what weight, if any, Dr. Niedermeier's opinion deserves. Rather, the court concludes only that there was sufficient contemporaneous corroborating evidence to support the opinion and to require the ALJ to analyze it using the § 404.1527(c) factors. Because the ALJ never undertook this analysis, the court must remand the matter so that the ALJ can do so.

**B. The ALJ may need to reconsider plaintiff's remaining arguments on remand.**

The court will offer some additional guidance to the ALJ on plaintiff's two remaining issues. First, plaintiff contends that the ALJ failed to apply SSR 96-7p and incorrectly disregarded plaintiff's subjective complaints of pain with "boilerplate" language. The court would ordinarily afford credibility determinations considerable deference and uphold them if the ALJ gives "specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* SSR 96-7p ("[T]he adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."). But "an ALJ cannot disregard subjective complaints of disabling pain just because a determinable basis for pain of that intensity does not stand out in the medical record." *Moss*, 555 F.3d at 561; *see also* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p.

In this case, the ALJ recited the relevant medical evidence of plaintiff's history with pain, the treatment plaintiff pursued, and the limitations plaintiff's pain imposed on his daily activities. R. 27-28. The ALJ found plaintiff to be only partially credible, focusing on the fact that plaintiff did not seek treatment for his pain, and noting that while plaintiff said he "was unable to afford care and did not have health insurance during this period . . . there is no evidence that the claimant was denied care or that he sought out free or low-cost health care options." R. 27. The ALJ also observed that "[d]espite the complaints of allegedly disabling symptoms, the claimant has not taken any medications for those symptoms except for over the counter ibuprofen intermittently." *Id.* Finally, the ALJ cited examples of inconsistency between plaintiff's pain and home treatment with heat and ice packs, and indicated that plaintiff had admitted to activities that belied disability such as lifting, walking with a normal gait, and being on his feet for nearly six hours a day. R. 28.

This analysis is deficient for several reasons. First, an ALJ may use infrequent treatment to support "an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency [but] the ALJ must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (internal citations and quotation marks omitted). In this case, the hearing transcript indicates that the ALJ did not explore plaintiff's treatment history. In fact, the only mention of plaintiff's ability to afford treatment occurred during a brief exchange between plaintiff and his attorney. R. 132. The testimony confirmed that plaintiff has not had health insurance since at least 2008, but did not discuss low-cost treatment options. *Id.* Another deficiency lies in the ALJ's complete omission of relevant evidence. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence

13

that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Here, contrary to the ALJ's finding, ibuprofen was *not* the only medication plaintiff took for his pain. In fact, treatment records from July 9, 2008, confirm that Dr. Plooster prescribed Oxycodone for pain relief. R. 404. A final problem with the ALJ's credibility determination is that it does not take into account Dr. Niedermeier's opinion, which may provide objective support for plaintiff's subjective complaints. The court therefore suggests that the ALJ make a new credibility determination on remand.

The second remaining issue is that plaintiff maintains that the ALJ could not have properly considered whether plaintiff's impairments met or equaled the severity of a listed impairment because the ALJ did not consider Dr. Niedermeier's opinion. "The Listing describes impairments that are considered presumptively disabling when a claimant's impairments meet the specific criteria described in the Listing . . . . The claimant bears the burden of proving his condition meets or equals a listed impairment." *Maggard v. Apfel*, 167 F.3d 376, 379-80 (7th Cir. 1999) (internal citations omitted). Plaintiff does not identify which listed impairment he believes his impairments equal in severity, but suggests that he can carry his burden of proof by presenting evidence of his obesity. Dkt. 19, at 8. According to SSR 02-1p, "[o]besity may be a factor in both 'meets' and 'equals' determinations" under the listings. For example, an ALJ is free to conclude that obesity "increase[s] the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1p.

In this case, the ALJ's discussion of the listed impairments is relatively short. R. 26. In concluding that plaintiff's limitations did not meet or equal the severity of a listed impairment, the ALJ emphasized that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." *Id.* Although the ALJ need not go through each listing line by line, the Seventh Circuit has "held that an ALJ should mention the

14

specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Here, as with the credibility determination, the ALJ may need to revisit this issue in light of Dr. Niedermeier's opinion. Even if the opinion is insufficient to carry plaintiff's burden of proof, the ALJ should engage in a more complete discussion of the listings to demonstrate that he has undertaken the thorough analysis required at each step of the evaluation process.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff Mark Pape's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 21st day of August, 2014.

BY THE COURT:

/s/
JAMES D. PETERSON
District Judge